UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GARRICK TRUELOVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:17cv265 |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant has not engaged in substantial gainful activity since October 21,

2013, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: intermittent explosive personality disorder; schizoaffective disorder; cannabis abuse; mood disorder; borderline intellectual functioning (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, routine and repetitive tasks but not at a production rate pace (e.g assembly line work); only simple work-related decisions; occasional contact with coworkers and the public; time off task can be accommodated by normal breaks; and the claimant would be absent from work one day a month.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on November 27, 1989, and was 23 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security act, since October 21, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 19-28).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability

benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on December 22, 2017. On January 23, 2018, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff initially alleged disability beginning October 30, 2007, but then amended his alleged onset date to November 28, 2007, the day after his 18th birthday (Tr. 217, 247, 260).

Plaintiff had previously filed an application for Childhood Disability Benefits (CDB) on February 27, 2009, and was found disabled as of October 31, 2007, because of schizoaffective

4

disorder and borderline intellectual functioning (Tr. 110). In December 2012, the agency conducted a continuing disability review and found that Plaintiff was no longer disabled (Tr. 135-36, 178-85). Plaintiff did not appeal the cessation determination (Tr. 17). Instead, he protectively filed the application for SSI at issue here. After a hearing, an ALJ found that Plaintiff was not disabled at any point from the date of his SSI application through the date of the ALJ's April 12, 2016 decision (Tr. 17-28). The Appeals Council denied Plaintiff's request for review of this decision (Tr. 1-3), thereby rendering it the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 416.1481. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

In support of remand, Plaintiff first argues that the ALJ erred by not accounting for his temper, blackouts, and inability to be trained for routine and simple safety procedures. Plaintiff claims that he has ongoing episodes where he loses his temper. Plaintiff points out that the VE testified that this is not consistent with competitive employment. Plaintiff claims that he is a paranoid schizophrenic and thinks people are out to get him, yet the RFC states that he can be around coworkers, supervisors, and the general public up to a third of the time. Plaintiff further claims that the ALJ failed to address his blackouts and memory problems, as well as his attempts at self-harm.

The Commissioner, however, points out that the ALJ found intermittent explosive personality disorder to be a severe impairment at step two of the sequential evaluation (Tr. 19). The ALJ acknowledged Plaintiff's responses to his representative at the ALJ hearing, where Plaintiff alleged that he has problems with his temper and loses his temper at home once or twice a month (Tr. 24). The ALJ also considered Plaintiff's testimony that he had problems controlling his temper in his previous employment (Tr. 24). The ALJ considered Plaintiff's father's testimony

that Plaintiff's emotions overwhelm him during a temper tantrum (Tr. 24). The ALJ also noted, however, that mental health treatment records did not show persistent problems with anger (Tr. 24). The ALJ further noted that medical records throughout 2015 showed that with mental health treatment and medications, Plaintiff reported improvement in his anger and other symptoms (Tr. 24, 25, 25). As the ALJ correctly noted, Plaintiff reported to his therapist that medications continued to help with his anger and mood, and he denied any further outbursts (Tr. 494). Taking the evidence as a whole, the ALJ included in the RFC a limitation that Plaintiff would likely be absent one day a month because of problems controlling his temper, and he also limited Plaintiff to only occasional social contact (Tr. 26). Plaintiff has failed to file a reply, and has not addressed the Commissioner's argument. Nor does Plaintiff discuss medication in his opening brief, and does not dispute the evidence that the medication is helping him. In light of the evidence that Plaintiff's mental problems have subsided with medication, there is no basis to remand on this point.

With respect to Plaintiff's alleged blackouts, Plaintiff does not exactly explain what he means by the term "blackouts," but it appears that he means that he spaces out, blanks out, forgets what he is doing, and that he "may lose track of what he is doing periodically"—not that he loses consciousness (Tr. 93). Thus, Plaintiff appears to be alleging lapses in concentration—an area in which the ALJ found moderate limitations (Tr. 22, 26). Plaintiff points to his allegation that he "at times goes into a blackout," citing Tr. 546, which is the portion of a discharge summary documenting Plaintiff's subjective complaints. Plaintiff does not allege that he presented ongoing complaints of memory or concentration problems to his treating sources. Moreover, citing Exhibit 14F, the ALJ correctly noted that after having mental health treatment, Plaintiff's mental status

6

examinations performed by the Northeastern Center showed no problems with memory, attention, concentration, or staying on task (Tr. 25, 498, 508).

With respect to the alleged "safety risks", and allegations of self-harm, the Commissioner points out that Plaintiff is not restricted from driving. In any event, it is clear that the ALJ considered Plaintiff's allegation that he was fired in 2014 because of safety reasons (Tr. 23). The ALJ also considered Plaintiff's brief inpatient psychiatric admission after being found on an overpass with a plan to jump (Tr. 25). However, as the ALJ also noted, Plaintiff was under the influence of both alcohol and marijuana at the time (Tr. 25). The ALJ also noted that Plaintiff had no mental health treatment until February 2015, that he had no decompensations, no emergency room treatment, and no legal issues as a result of mental health problems (Tr. 24). Significantly, the ALJ also noted that the mental health treatment and medications resulted in symptom improvement (Tr. 24, 25, 26). As the Commissioner correctly states, it is not clear what else Plaintiff thinks the ALJ should have said on the issue of safety, or how the outcome of the case would have been different if he had said more. Nor does Plaintiff identify any evidence of additional functional limitations beyond those the ALJ found that the ALJ should have included in the RFC. Clearly, Plaintiff has failed to show that remand is appropriate on this point.

Next, Plaintiff argues that the ALJ erred in not conducting the eight-step improvement analysis for the continuing disability benefits period and in "fail[ing] to address that process" (Plaintiff's Brief at 10, 11). At issue before the ALJ was the SSI application that Plaintiff filed in 2013—not an appeal of the disability cessation. The ALJ correctly noted that Plaintiff did not appeal the disability cessation determination, and Plaintiff appears to concede this point (Tr. 17, Plaintiff's Brief at 2). The December 14, 2012 notice of cessation informed Plaintiff that he could

7

appeal the cessation if he so desired, and it informed him how to do so; how to get assistance to do so; and that he would need to appeal within 60 days (Tr. 178-80). As noted, Plaintiff did not appeal. Instead, he filed a new application for SSI (Tr. 247).

The ALJ considered Plaintiff's implied request to reopen the cessation determination (as evidenced by Plaintiff's citing an alleged onset date of disability during the previously adjudicated period), but ultimately decided that the record provided no reason to reopen the prior applications (Tr. 17). As the Commissioner points out, the ALJ's finding on this point is not subject to judicial review. *See* 20 C.F.R. § 416.1403(a)(5) (administrative actions that are not initial determinations, including the denial of a request to reopen a determination or decision, are not subject to judicial review).

Plaintiff also argues that the ALJ should have considered whether he became re-entitled to CDB under Title II of the Act (Plaintiff's Brief at 11). Plaintiff fails to note, however, that to become re-entitled, a claimant must apply for re-entitlement. *See* 20 C.F.R. § 404.351 ("If your entitlement to child's benefits has ended, you may be re-entitled on the same earnings record if you have not married and if you reapply for re-entitlement." (Emphasis added)). There is no indication in the record, nor does Plaintiff even allege, that he applied for re-entitlement, as the regulations require. Thus, there is no basis for Plaintiff's allegation that the ALJ erred by not considering whether Plaintiff became re-entitled to CDB, and there is no need for remand on this point.

Next, Plaintiff argues that his condition meets or equals Listing 12.05C. Listing 12.05C describes "significantly sub-average general intellectual functioning" with deficits in adaptive functioning initially manifested before age 22, as well as a "valid verbal, performance, or full

scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See* 20 C.F.R. 404, Subpart P, Appendix 1, § 12.05C.5 Further, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In the present case, the ALJ found that Plaintiff's borderline intellectual functioning (BIF) was a severe impairment at step two of the sequential evaluation (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21). In so doing, the ALJ noted that the State agency medical consultants who reviewed this case at the initial and reconsideration levels opined the same (Tr. 21). The ALJ acknowledged that additional evidence had been submitted after these doctors reviewed this case, and explained that nothing in that evidence suggested that their conclusions were incorrect (Tr. 21).

The ALJ considered Plaintiff's school records, showing that he received special education services in high school for emotional disability (Tr. 25). The ALJ also considered Plaintiff's 2009 IQ scores: a full scale IQ of 75; verbal IQ of 81; and performance IQ of 72, which placed him in the borderline range of intellectual functioning (Tr. 25). The ALJ further considered that Plaintiff graduated from high school, could read, write, add, subtract, and manage money, and had previously worked (Tr. 23, 26). Plaintiff said that he understands what he reads in newspapers, follows television program story lines, and checks out books in the library with his own library card (Tr. 25). The ALJ noted that Plaintiff had an expired driver's license, cooks two to three

times a week without difficulty, and grocery shops (Tr. 24). The ALJ also considered the State agency psychological consultants' opinions that Plaintiff was capable of understanding, remembering, and carrying out unskilled tasks, attend to those tasks for a sufficient time to be able to complete them, relate to others on at least a superficial basis, and manage work stress (Tr. 26). In light of the above, this court agrees with the Commissioner that the ALJ's finding that Plaintiff's mental conditions did not meet the requirements of any listed impairment are supported by substantial evidence.

Plaintiff claims that Listing 12.05C is applicable to his condition because he has a full scale IQ "likely within a standard deviation of 70" (Plaintiff's Brief at 11). However, Plaintiff offers neither factual nor legal support for this claim. The fact remains that Plaintiff's lowest IQ valid score is 72, which places his condition out of the range of Listing 12.05C. As noted above, if even one element of a Listing is not satisfied, then the Listing itself is not satisfied. Moreover, by noting Plaintiff's account of his functional abilities, as well as medical source opinions on those abilities, the ALJ showed that Plaintiff did not have the requisite deficits in adaptive functioning that Listing 12.05 requires.

Plaintiff alleges that the ALJ should have sought expert testimony on the listing equivalence issue. However, the signature of a State agency medical consultant on a Disability Determination and Transmittal Form ensures that a designated medical expert has considered the question of medical equivalence. SSR 96-6p, 1996 WL 374180 (S.S.A.). The evidence of record therefore includes expert opinions indicating that Plaintiff's impairments do not medically equal a Listing (Tr. 156, 167). *See* SSR 96-6p at *3 (the requirement to receive expert opinion evidence into the record may be satisfied by a Disability Determination and Transmittal Form signed by a

State agency consultant). Clearly, Plaintiff has failed to produce any evidence contradicting the ALJ's finding, supported by substantial evidence in the record, that his impairment does not medically meet or equal a Listing. Thus remand is not appropriate.

Next, Plaintiff alleges that the ALJ failed to fully consider his upper right extremity impairment. However, the record clearly shows that the ALJ thoroughly addressed both Plaintiff's allegations about the after-effects of his right elbow fracture sustained in a fall in January 2012, and the medical evidence relevant to it (Tr. 20). Additionally, the ALJ appropriately considered Plaintiff's subjective complaints about elbow pain as directed in the regulations at 20 C.F.R. § 416.929. The ALJ considered Plaintiff's allegations that he has occasional trouble lifting and moving his elbow, as well as Plaintiff's estimate that he can only lift and carry 25 pounds because of pain (Tr. 23-24). The ALJ also noted that, among other activities, Plaintiff indicated that he does laundry once a month and sweeps/vacuums once a week without any trouble (Tr. 24).

In finding Plaintiff's elbow impairment not severe at step two of the sequential evaluation, the ALJ appropriately considered x-ray results, as well as documentation of post-surgical healing and Plaintiff's failure to follow prescriptions for physical therapy and advice to stop smoking to aid the healing process (Tr. 20). The ALJ further noted that State agency medical consultants found Plaintiff's elbow impairment to be non-severe because it did not meet the 12-month durational requirement (Tr. 21, 160, 161). *See* 20 C.F.R. § 416.920(a)(4)(ii) (referencing the need for a severe medically determinable physical or mental impairment (or combination of impairments) that meets the durational requirement in 20 C.F.R. § 416.909). The ALJ gave those opinions great weight because they were consistent with the overall evidence of record,

including records from Plaintiff's treating physician, Trina Chapman-Smith, M.D., discussed below (Tr. 21).

The ALJ also considered the results of the consultative examination that H.M. Bacchus, Jr., M.D. performed on August 3, 2014—including that the elbow fracture was fully healed; and that Plaintiff had 4/5 grip strength on the right, slight atrophy of the intrinsic hand and thumb muscles, and reduced range of motion in the elbow (Tr. 20, 483). The ALJ then observed that Plaintiff did not return to a doctor for elbow problems until July 2015, when he complained of right elbow pain (Tr. 20).

As noted above, the ALJ also considered treatment notes from Dr. Chapman-Smith in early 2016, showing improvement in Plaintiff's elbow impairment. Dr. Chapman-Smith documented full strength in the right upper extremity, joint swelling, slight tenderness, normal range of motion, normal stability, and normal muscle strength/tone (Tr. 20, 565, 567-68). The ALJ later noted that Naproxen helped the pain, and that stiffness, swelling, muscle weakness and myalgias had resolved (Tr. 20). In addition, the ALJ considered Dr. Chapman-Smith's March 2016 opinion and explained why it was not supported by the evidence. In so doing, the ALJ noted that Naproxen helped the pain and that there were only slight problems with the elbow noted on physical examinations (described as "tenderness at tip of elbow only" and a normal exam with "slightly, not very impressive" tender medial epicondyle)(Tr. 26, 565-66, 567-68). Thus, the ALJ ably demonstrated that he fully considered both Plaintiff's subjective complaints and the medical evidence relevant to Plaintiff's elbow impairment.

Plaintiff asserts that the ALJ improperly discounted SSA's consultative examiner, while dismissing Dr. Chapman-Smith's later physical examination as "cursory" and less attentive than

Dr. Bacchus's examination. However, nothing in the record shows that Dr. Chapman-Smith was less attentive to her own patient than Dr. Bacchus was during his examination. Both Dr. Bacchus and Dr. Chapman-Smith conducted standard physical examinations that included observation of the elbow and evaluations of strength, stability, muscle tone, range of motion (Tr. 483, 565, 567-68).

Plaintiff alleges that the "hand-isolating questions of the ALJ at the hearing would have been particularly misleading" in light of Plaintiff's BIF and emotional problems, citing Tr. 60-63). The Commissioner notes that there was a moment at the hearing where Plaintiff appeared not to understand that the ALJ had moved on from asking about his elbow to asking about his hands, but Plaintiff does not allege that he remained confused once the ALJ clarified that he had moved on to talk about Plaintiff's hands (Tr. 63). Moreover, Plaintiff was represented by an attorney at the hearing—the same attorney who now represents him (Tr. 34). Had the temporary confusion not been resolved at the time, Plaintiff's attorney could have resolved it.

Plaintiff cites only to his own subjective complaints to allege that he had ongoing limitations in his elbow. It is well-settled that a claimant's own subjective statements cannot establish disability. 20 C.F.R. § 416.929(a) (statements about your pain or other symptoms will not alone establish that you are disabled).

Plaintiff suggests that the ALJ did not adequately credit his "work ethic" and his "gusto for work" . However, as the Commissioner points out, at step one of the sequential evaluation, the ALJ addressed the work Plaintiff did after his application date (Tr. 19). The ALJ considered the amount of money Plaintiff earned in 2013, and his testimony that he was fired because he was spacing out on the job (Tr. 19). The ALJ appropriately considered this work activity to be an

unsuccessful work attempt, rather than disqualifying substantial gainful activity (Tr. 19). An unsuccessful work attempt is "work that you are forced to stop or reduce below the level of substantial gainful activity after a short time because of your impairment." *See* 20 C.F.R. § 404.974(a)(1). Thus, the ALJ acknowledged that plaintiff tried to work in 2013 (and for 2.5 weeks in 2014), but found, in Plaintiff's favor, that at that time, his impairments prevented him from being able to do so. As the rest of the ALJ's decision explains, later evidence shows that with mental health treatment, Plaintiff's conditions improved enough for him to be able to perform unskilled work with certain additional mental limitations (Tr. 19-28).

This court finds that the ALJ appropriately considered all Plaintiff's subjective complaints in light of the rest of the evidence of record, and he cited substantial evidence to support his finding that Plaintiff's elbow impairment was not severe. Remand is not warranted.

As none of Plaintiff's arguments have any merit, the decision of the ALJ must be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: March 19, 2018.

                                              s/ William C. Lee
                                              William C. Lee, Judge
                                              United States District Court